1615-03. I will mention a couple of things. We'll take a break after the first three cases. And the second comment is, because we do have a full slate of cases, I am going to need to confine everyone to your allotted 15 minutes. Obviously, if there's a pending question, you can go ahead and briefly answer that question without further permission. But we'll hear first from Ms. Hartfield. Thank you. Good morning, Your Honor. My name is Lynn Hartfield, and I represent Petitioner Delmark Vreeland. The Supreme Court has clearly stated that the right to counsel is paramount, and it can only be lost through a knowing, voluntary, and intelligent decision to forego counsel. Here, the Colorado Court of Appeals violated that clearly established federal law by upholding the trial court first, allowing Mr. Vreeland's counsel to withdraw. Second, without ensuring that he knew that he was going to lose his right to counsel. And third, without permitting him the choice to have counsel. If the remedy of federal habeas corpus is to have any meaning at all, it's to remedy the wrongful denial of these kinds of fundamental rights. Now, the case law surrounding waiver and forfeiture is confusing, and that's because courts use those terms interchangeably. We have many cases that speak of waiver, implied waiver, forfeiture, warrant forfeiture, forfeiture by conduct. But what the court should be focusing on is those elements. Is there knowledge? Is there voluntariness? And is there an intelligent decision to forego counsel? Now, what makes the denial of counsel permissible under Supreme Court law is when those elements are present. And in every case that the government cites, those elements are present. In the cases where those elements are not present, and those are the Ninth Circuit cases that I cited in my briefs, there is a violation of clearly established federal law. Well, in the Ninth Circuit Meek decision that you cited, that was three years prior to the AEDPA. And I think you acknowledge in your opening brief that there is no Supreme Court precedent on whether or not the right to counsel, though certainly fundamental, can be forfeited through conduct, through dilatory or through poor conduct from the defendant. Is that correct? I wouldn't agree with that. It depends on how you define forfeiture. And that's one of the problems, is that courts define forfeiture very differently. I would say that if a defendant – if there is evidence that the defendant knew he was going to lose his right to counsel, voluntarily engaged in conduct that would lead to the loss of counsel and did so intelligently, then there is Supreme Court law addressing that. There is clearly established Supreme Court law that says that's okay. What we don't have is the court saying, well, you can't do this, you can't do that. But this is similar to Panetti v. Quarterman, where you have a clear rule, we have a clear rule that the right to counsel is paramount. We have an exception, knowing voluntarily intelligent choice to forego counsel. And what the State is saying is there's no clearly established Federal law saying, well, the judge can't take away counsel based on – as a sanction. And we don't have that. But we also don't have clearly established Federal law saying that the judge can't take away counsel because the public defender's office is out of money. We don't have clearly established Federal law saying that the judge can't say, well, you've had two years of law school, so therefore you don't need counsel. Or this case is very simple, you don't need counsel. So there's a lot of different areas where we don't have the Supreme Court saying you can't do that. But what we do have is a clear rule and a clear exception. Well, what – what do you do with the Carruthers case that came down a few weeks ago in the Sixth Circuit? Then Judge Sotomayor's opinion for the Second Circuit in Gilchrist, the Fischetti decision. All of these decisions seem to say, as I read them, that – that there is no Supreme Court precedent suggesting that a warning is necessary to forfeit the right to counsel. Well, the – respectfully, I would disagree with the analysis in those cases. I would agree with the results. If I had been on the Court, I probably would have written a concurring opinion. Because in all of those cases, you had knowledge, voluntary conduct, and an intelligent decision. So the – the problem with those cases is not the results, it's the analysis. There is clearly established Supreme Court law that says you can – a defendant can forego counsel through knowing, voluntary, and intelligent choice, and that doesn't have to be explicit. And so all of those cases can be fit within that framework. It's just that with the changes in terminology, I think the Court's got it wrong in their analysis, frankly. But looking at the cases that – that are cited by the Court, we have a bunch of cases involving failure to hire counsel. All of those can be fit, again, within that framework. These are people who are told you must get counsel by a certain date. They don't get counsel by that date, and then they have to go to trial, not surprisingly, by themselves. We have these tax protester cases and people who fail to accept appointed counsel. And that's the same thing. The Court is giving them a choice. It's saying, look, you've got to take this lawyer or else you're on your own. And that's fine, too. That can be fit within the exception to the rule of the right to counsel. Carruthers is the same way. We have the Court repeatedly saying to the defendant, you need to shape up. You need to stop threatening your lawyer or else you're going to be going pro se. And in cases where we have – we have defendants who are physically assaulting appointed counsel, we can infer that they knew what was going to be the natural and probable result. Okay. When you say Carruthers, are you talking about the Tennessee Supreme Court's opinion? Yes. Okay. Because the Sixth Circuit, I thought, said exactly the opposite. I thought the Sixth Circuit said that on direct appeal, the Sixth Circuit might well have said that there was a denial of a right to counsel. But because of the gloss of 2254d-1, the Court was not prepared to say that the Supreme Court had specifically required a warning before the right to counsel can be forfeited. Am I misremembering the Sixth Circuit's opinion? Again, I would agree with the result in the Sixth Circuit case. I think their analysis is wrong, again, because what they're saying is we can have a clearly stated rule, we can have a clearly stated exception, but if a judge goes somewhere outside of that, we're just going to say we can't consider this case under 2254d-1. And that's where I think the analysis is incorrect, because in Carruthers, you could easily fit what happened in that case within the exception under clearly established law. I'm sorry to my colleagues and to you for monopolizing so much time, but I do have a question. So what do you have hypothetically? I'm the district judge and you're the defendant. And I keep saying over and over again, you need to quit hiring a lawyer. These are not appointed counsels, other than Ms. Minor. And then on the eve of trial, you know, having this conflict and firing him, and then you go five months before Mr. Schadler and you're representing yourself pro se, and then you finally get a lawyer and then you do it again. And the judge is clearly frustrated and he's not, you know, keeping it to himself. He's being very clear over and over and over again and admonishing Mr. Breland for, in the judge's view, manipulating the process. And so why can't one reasonably infer that Mr. Breland knew very well that once he consented, once he said, Mr. Schadler, to the judge, I want him gone, it's within, I think, 11 days of trial. There's no pending, you know, so unless he gets a continuance, he knows he's stuck within 11 days of going to trial and he's fired his lawyer. Why isn't it a fair inference that Mr. Breland did know that he was, if he was going to fire Mr. Schadler, that he was going to be stuck representing himself? Well, what I'd say first is to turn to the Ronquillo case that I cited as supplemental authority. So the Colorado Supreme Court has made explicit what the Court is supposed to do in that situation when you have retained counsel. First of all, there is a right to fire retained counsel for any reason. But looking at the facts of this, it's not even clear whether Breland fired Schadler or whether Schadler quit. But assuming that Breland said, Schadler, I want you to withdraw, what the Court would have had to do in that situation, and the Colorado Supreme Court has now made that explicit, would have been to say, okay, hold on, Mr. Breland, what do you want to do if you fire Mr. Schadler? And Breland would have said, well, I want a continuance to get another lawyer. And at that point, the Court could have said, I'm not granting any more continuances, so here's your choice. You either go pro se on 11 days from now or you stick with Mr. Schadler and work out your differences. And that would have been perfectly fine. But that's not what the Court did. And if we look at the critical hearings, when Schadler comes in, the Court says, I'm not real happy about this, but I have to do this. I have to give you a continuance. And the Court never says anything like, Breland, this is your last counsel. I don't want to hear from this again. Then when you look at the next hearing on November 17th, and that's at Volume 3, starting at 503, Schadler moves to withdraw. And if you look at the circumstances, he says he's being, quote, fired in effect. He doesn't say, Breland is firing me. Breland hotly disputes what happened here. But the point is that what the Court didn't do here was give Mr. Breland the knowledge with which he could have made a choice. And then, to make matters worse, the Court goes on to say, go ahead, hire new counsel. No problem. You hire new counsel. I'll consider any motions that a new lawyer will file. So a reasonable person in Breland's position would not have known that he was going to lose his right to counsel. Kagan. Well, didn't the Court make explicit findings, or the Colorado Court of Appeals make explicit findings, essentially, that the trial court had found that he was fully aware of the consequences of what he was doing? Essentially, they found that he had impliedly waived, not forfeited. While they used the word forfeited, they found he impliedly waived counsel. They very specifically said this. They said that they outlined the behavior and said that this pattern of obstreperous, truculent, and dilatory behavior may be deemed relevant as to whether such conduct has been undertaken with full awareness of the consequences of doing so, and that's after they set out the standard of voluntary knowing and intelligent waiver. And then later they say, this behavior supports the conclusion that defendant who is highly intelligent was manipulating the legal system with full awareness of the consequences of what he was doing. Why isn't it an implied waiver? And why isn't the – and that's exactly what the Colorado Court of Appeals found. Well, there's – again, there's no implied waiver because of what the trial court actually says. The trial court says to him when Shidler enters, says, I don't particularly like this, but I am going to let him come in, and I would be setting up error if I didn't grant a continuance. A reasonable person would understand that to be, I have the right to counsel, and if I need new counsel, I will get a continuance. But then when we look at the – Well, didn't the trial court make fact findings otherwise – or didn't the court of appeals make a finding, though, otherwise? That is not how they viewed the evidence. And I think then we get into D2. Regardless of what words the trial court used, this defendant knew exactly what he was doing. I think then we'd get into D2 because the law has to be, if we're going to go there and say that someone can forfeit their right to counsel by – It's not a – I'm talking about an implied waiver now, not a forfeiture. Okay. So an implied waiver, then you have to acknowledge. And there's no evidence.  There is no evidence in the record. That's really what the Colorado Court of Appeals found, was knowledge. And there is no evidence to support that. Well, they relied on his pattern of obstreperous, truculent, and dilatory behavior. The court actually – I don't have the quote here, but the court talked about how he had manipulated the court and that he was going through counsel knowing exactly what he was doing for the purposes of delay. It talked about the fact that this had been part of his – how it even – that he'd even intimidated the court, how this had been sort of part of his M.O. It's all there. There is no evidence on the point that Mr. Vreeland knew that by – that by having – allowing Shidler to file a motion to withdraw, that he was not going to get counsel. The evidence is to the contrary, because the court told him when Shidler entered that he would – he had to grant a continuance. The court never said to him when Shidler was withdrawing, never said anything about, this is your last counsel. In fact, said, go ahead and hire new counsel. So there is nothing in the record that would support a finding that a reasonable person in Vreeland's situation would know. But there's nothing in the – nothing, no case law that requires that for an implied waiver, that he must have a warning. And I – It's based on a totality of the circumstances. And respectfully, I would – I would disagree that there's no case law saying that you need to have knowledge of voluntary choice. It's not knowledge. I'm talking about implied now. It's – oh, you're – you seem to say that the court must explicitly give a warning. That's just not law. And no, I am not saying that the court has to explicitly give a warning. But there has to be evidence that he knew. And the evidence in this case is to the contrary, because if he had known, of course, he wouldn't have – he wouldn't have fired his attorney. And he wouldn't have been saying, can I go hire new counsel? In fact, I've been contacting new counsel. So the evidence is actually to the contrary, that he knew that he was going to lose his right to counsel. And then even looking at what the court says, we can't even conclude that the court meant to convey that, because the court told him, go ahead, get new counsel. I'll consider any motions that new counsel will – will file. So I would respectfully disagree with that. It looks like I only have 30 more seconds. But if I can reserve that time for rebuttal. Sure. Okay. We'll hear from Mr. Crane. Good morning, Your Honors. May it please the Court. My name is Ryan Crane. I represent the Warden in this case. Do you mind maybe moving the microphone a little closer? Absolutely. Thank you. And let me know, because I can't hear exactly whether I'm – whether you're getting this from the mic or not. But, Your Honors, the courts in this case, the State courts reasonably found – I've used the term forfeiture just because there was not an explicit warning. And I feel like that makes sense. You can put that microphone up to your mouth so we'll get closer to it. Yes. And I've used the term forfeiture just because I felt it was easier for the sake of the analysis because there was not an explicit warning. And I recognize that. And the case law, either way, it just doesn't make a difference because this is an AEDPA case. And the State courts found reasonably that Mr. Vreeland knew what was going to happen. And it certainly found reasonably that his purpose was to delay the proceedings and to essentially prevent the case from ever going to trial. Those were not unreasonable findings. For example, this was his seventh felony conviction. This was a man with multiple aliases and Social Security numbers. He was intelligent. He understood what was happening. And yet, according to him, everyone else was victimizing him. He was the one who was being mistreated in all of this. And the trial court made those findings and found none of that is, you know, your view of things is not true. That's how you have portrayed all of this. Everything was the lawyer's fault. All of these lawyers were to blame. I'm to blame. The prosecutor's to blame. Well, why did the judge then permit him, the last lawyer, to withdraw? The reason that occurred, and that's an important point, I recognize counsel of choice. Mr. Vreeland did not need good cause. Why did the judge let him withdraw and then wouldn't let a new lawyer in? And he couldn't ethically serve if he couldn't get prepared. Right. That's an important point, Your Honor. The point is, Mr. Scheidler, the last lawyer, came in already ethically conflicted. Mr. Vreeland knew the trial date was 10 days away but showed up with Mr. Scheidler asking to withdraw. Mr. Vreeland had no choice in the matter at that point. The trial judge said, I cannot make you continue forward, counsel, because you are conflicted now. He's suing you and grieving you, and I can't make you go forward. In fact, Scheidler himself said, I've consulted counsel on my own, and counsel has advised me I cannot ethically continue in this case. Your Honor, I need to be off this case. Well, why did he wait until just before the trial to come up with that idea? Because that's when Mr. Vreeland manufactured this conflict, again, was approximately a month. If he went to another lawyer and agreed there was a conflict, he must have known about the conflict earlier, and the judge let him withdraw but would not allow new counsel to enter an appearance unless the guy would be ready to go to trial instantaneously. Yes. So, Mr. Scheidler, I don't know when the conflict first arose. Certainly, he appeared in court 10 days before trial. Maybe the conflict had occurred a week before that or something, and he had time to speak with an attorney to say, can I even go forward with this case? I don't know. Those facts are not in the record. I don't think the State court's findings were unreasonable. What the State court did was find there's no good basis for another continuance. The State court, and I think this is an important point, the courts did not say you cannot have another lawyer. You've forfeited forever your right to any counsel. What the State court found was you have you can discharge this lawyer and, in fact, he can't serve, and you can get a new lawyer if you want, but there is no good grounds for another continuance. Mr. Rieland did need good grounds for another continuance, a third continuance. And the grounds he had were he had manipulated and conflicted this lawyer off a case. For the third time, he was looking for another last-minute delay of trial. And the trial court said, given your purposes, which I find are to prevent trial, there's no good grounds for another continuance. You can have a lawyer, but we will not continue the case. So that's the type of forfeiture of counsel that we're dealing with. And if the court is troubled by the overall situation, I think that's an important point to note. It's a little bit different because of that than some of the appointed counsel. What do you think the Colorado Court of Appeals was discussing when they twice mentioned that this pattern of behavior indicated very clearly that he was, that he undertook this behavior with full awareness of the consequences of what he was doing? And another time they said, well, both times, with full awareness of the consequences of what he was doing. What do you think they meant by consequences? Did they mean the consequence meaning you're going to proceed at trial without counsel? That, to me, is ambiguous. And that's why I didn't want to press that point, just because. Okay. I wondered why you weren't pressing the implied way or point. Opposing counsel made that point that that may have not been what they meant as far as the implied, as far as what his implicit knowledge was? Well, they cited, they discussed very clearly knowing an intelligent waiver and what's required. And then they said that. That's true. And so maybe I should have argued that point and said clearly what they meant was. I didn't, I was not entirely sure what they meant. And so the reason I approached it the way I did is I felt like I don't take back anything I said in the answer brief. I feel like everything is entirely supportable by the record in the state court's opinion. I think it can be read like you're saying. But because I felt like there was a little bit of uncertainty there, I didn't want to make the point and then have to take it back later in the brief and say, well, you know, they might have meant this, though, but whatever. Even if they meant only that he knew the consequences were you're going to trial without a lawyer because you have no grounds for another continuance. You can't conflict a lawyer off a case just before trial again and then show up and say, well, I need a new lawyer judge again. That's not good grounds. He, at some point he would have known I don't get another continuance forever. And if I conflict the lawyer off, who am I going to find to try a case in 10 days? So it's implied. I think it can be implied waiver. But he understood he'd proceed pro se. Yes. Yes. In that case, I guess, yes, it's true. It's an implied waiver. And he understood what the eventual consequences would be, which is he would have no lawyer. Yes. That's true. I just wonder what else they could have been trying to say. They're very clearly saying twice after talking about a waiver. I guess that that is. You're right. I don't know that argument. I just wonder. No, it's true. I mean, that is the import of their opinion. That's what they're saying. So I guess in response to a couple of things that were mentioned by opposing counsel, the courts of appeals, the Sixth Circuit and the Second Circuit and Carruthers and Gilchrist did not just throw up their hands and say, well, there's no Supreme Court case on point. Therefore, we can't find an unreasonable application. In fact, they said the opposite. They said we can't find a contrary to Supreme Court case, certainly, because there's no Supreme Court case on forfeiture of the right to counsel. However, what then Judge Sotomayor said in Gilchrist was that doesn't mean that there can't be an unreasonable application of forfeiture. For example, if something was so utterly trivial, that was her word, her phrase, that it would be something could be so utterly trivial that it wouldn't justify a forfeiture of counsel. The court, of course, didn't have to address that. This court doesn't have to because these circumstances here are not utterly trivial. These were multiple continuances of trial with a deliberate motive to thwart or prevent the case from ever going to trial over the course of a year and a half. This case is somewhat, I think the court pointed this out, but this case is kind of like the failure to hire cases in the sense that there was a scheduled trial date, defendant showed up for the time of trial with a lawyer that he had now essentially conflicted off the case and rendered unable ethically to try the case, and he had no good excuse or continuance. It's similar to the cases where a defendant knows the trial date and is either told in some of the cases you'll end up pro se if you don't hire a lawyer. In some cases it's not. It's just told you've got to get a lawyer by the next trial date, and he shows up and, again, has no good excuse. This is the same thing. He showed up with no good excuse for another continuance, and the judge said, I told you, I'm sorry, we're going to trial in 10 days as scheduled. What about your opposing counsel's argument that when the judge comes to that conclusion, he's doing so without hearing from Mr. Breland? He's drawing unfavorable inferences to Mr. Breland based on what his lawyers are saying negatively, not only Mr. Scheidler, but Mr. Steinberg and the others, without hearing directly from Mr. Breland. So he's saying, based on what one party, what the lawyers are saying, that Mr. Breland is being manipulative and trying to prolong the inevitable without actually hearing from Mr. Breland. And what's wrong with their argument in that regard? Well, Your Honor, the Court did actually hear from Mr. Breland, and I discussed that on page 17 of the answer brief with citations to the record. The Court did give him a chance to explain his side of the story, and it takes up a few pages of the State transcript. But he did give his side of the story on why each of those lawyers had withdrawn. He didn't discuss why he went pro se for five months and then all of a sudden needed advisory counsel. But he did give his side of the story, and the Court recited also — the Court at the same hearing heard from Mr. Scheidler and said, what he's said, Your Honor, is just false. I've got records for all the things I've done on the case. We've done work on this case. I've paid this forensic expert, et cetera. And the judge also recited what the other attorneys had said when they withdrew and said, you know, with the prior attorney, it was blackmail, and it was there needs to be an FBI investigation, and you're grieving him, too. And so the Court considered what the other attorneys and Mr. Vreeland had said. You're talking about with Mr. Henry? Yes. What was the blackmail? And Mr. Vreeland, if I remember correctly, when he was given an opportunity to speak with regard to the blackmail incident, he said unequivocally, that's not true. And the judge said, well, I don't want to get into that. At the time that Henry withdrew? Henry, right. Yes, that may be correct, but what the judge did do was hear from Mr. Vreeland at Scheidler's withdrawal hearing and heard from Mr. Vreeland on all of the prior attorneys, including with respect to Henry. Mr. Vreeland did discuss Mr. Henry's withdrawal, and I think Mr. Steinberg's withdrawal also, and the judge did not credit Mr. Vreeland's account. I credit what the attorneys had told me and not your version that you just gave me. And I'll just respond to one other thing, and that's this, with respect to the idea that there are no cases that have ever approved the lack of a warning or withdrawal of counsel that was, where it's a counsel of choice situation, and the person ends up going to trial pro se. I addressed example cases on pages 41 and 42 and 51 and 52 of the answer brief, and that's in addition to, of course, Gilchrist and Fischetti, which thoroughly review that issue under Supreme Court precedent. So if the Court has no further questions, I thank the Court for tonight. Let me ask you one question about, on the Bill of Particulars, we haven't, I think, said that we either grant it or deny it yet, but I do have a question about it. The Bill of Particulars issue? I'll do my best. COA was not granted on that issue, obviously, so it wasn't briefed. Right. But as I recall, it's not been denied either. Oh, okay. I was not aware of that. I don't know if it was denied. Oh, you do? Go ahead. I don't know. I'll do my best. I'm not as familiar with that part of the case, but I'd be happy to hear the question. Okay. Well, my question, and feel free to take a pass on it, but my question is this. Why wasn't Mr. Breland surprised when the Bill of Particulars says that our best knowledge is that this incident happened on October 3rd and or 4th, and then the jury instruction allows a finding of guilt any time over a month and a half? And in district court, the respondent argued that, well, there was no amendment of the information, which may be true under Colorado law. But I'm wondering why there wasn't a lack of notice that the defendant was going to be confronted with a month and a half that they had to account for, particularly when the defendant is defending based on an alibi. It's much different to have an alibi for two days as opposed to a month and a half. And you can take a pass. Yeah, I just don't remember. I know I addressed the issue in the district court pleadings, and I think that's part of the appendix before the court, so I'm happy for the court to read the response there, but I don't recall off the top of my head the answer. Okay. Thank you. Thank you, Your Honors. We'll hear from Ms. Hartfield. Just a quick word about D2. One of the errors that the court made was in refusing to listen to these tapes. If the court is going to make a finding that Mr. Vreeland is responsible for firing these attorneys and ignores empirical evidence that would answer that question, that's unreasonable. The second thing I want to point to is there's this repeated allegation that he's getting a lot of continuances. But when you look at the continuances, the first setting was December 6, 2005. That was delayed because Attorney Henry asked for the competency exam. There's no basis for that. Vreeland didn't want it, yet that delay gets attributed to Vreeland. The second setting, February 22, 2006, that's delayed again because the State delivers 23 CDs a week before trial concedes there's Brady on those tapes. The court sanctions the DA for the late disclosure. Vreeland says, I don't want a continuance, and yet that gets attributed to him as a delay. The third setting was July 6th. Okay. You're going to need rep of because you're 30 seconds late. All right. So the bottom line is Vreeland asked for one continuance for himself, not four. Every time somebody wrongs Vreeland, it's attributed to him. And I'd urge the court to go through the facts and the reply brief because to the extent that this is being characterized as an implied waiver, there really isn't support for that, and many of the factual subsidiary findings are contrary to the record. Thank you, Your Honors. Thank you very much. This matter will be taken under advisement. I do want to comment to both counsel. Personally, I thought both sides' briefs were very, very good, and your advocacy today was equally effective. So thank you, counsel.